## CITY HOTEL CO v. AUMONT HOTEL CO.

### No. 10088.

Court of Civil Appeals of Texas.
San Antonio.

July 28, 1937.

Dibrell, Mosheim & Campbell, of Seguin, and Hal Browne, of San Antonio, for appellant.

R. A. Weinert, of Seguin, for appellee.

SMITH, Chief Justice.

Aumont Hotel Company owns a five-story hotel property in the city of Seguin, and leased it to City Hotel Company for a period of ten years, beginning on July 31, 1927. The lease contract embraced the following, among other, provisions:

"10. It is agreed that during the tenure and continuation of the lease, the lessees shall, at their expense, keep and maintain the building and elevators, plumbing and electric light fixtures, and all machinery belonging to and appurtenant to said hotel, in a good condition of repair, and at the termination of this lease will redeliver same to the lessor, in as good condition as when received, ordinary wear and tear and depreciation from age excepted; and excepting also loss or damage by fire, or by an act of God, or by a public enemy.

"11. And the lessees covenant and agree that during the continuation of this lease it will, at its own cost and expense, keep the furniture, fixtures and all equipment of said hotel fully up to the present quantity thereof, and will keep and maintain, in

good condition and repair, all the furniture, fixtures and equipment to which this lease relates, and at the termination of this lease, lessees will turn back and deliver to lessor, in good condition, the same personal property enumerated in the inventory hereto attached, or substitutes of like kind and character and of equal quality, allowance being made always for usual wear and tear and depreciation by age, and excepting always loss or damage by fire or by an act of God, or by a public enemy. "

This suit was brought by the Aumont Hotel Company, the landlord, against the City Hotel Company, the tenant, to recover, first, for damages for failure to keep and maintain the property in good condition, as required in the contract, and, second, for certain alleged unpaid rentals. The jury found that the tenant failed to "keep and maintain" the property "in a good condition of repair," and that thereby the landlord was damaged in the amount of $700. Upon those findings the court rendered judgment in favor of Aumont Hotel Company against City Hotel Company for $700, from which the latter company has appealed. The court denied recovery to the Aumont Company upon its claim for rents, and that company has appealed from that part of the judgment. Aumont Hotel Company will be referred to in this appeal as plaintiff and City Hotel Company as defendant, as in the trial court.

■■ The suit was brought before the termination of the lease, defendant still having possession of the property. Defendant presents its appeal upon two grounds of alleged error, which will be discussed in the order of their presentation. It is first contended that the suit for damages was prematurely brought; that as the contract required defendant to turn back the property to plaintiff at the expiration of the lease period in good condition, suit for failure to keep it in good repair during the term of the lease would not lie until after that term had expired. We overrule this contention. The established rule seems to be that when a tenant under this character of contract breaches the obligation to keep the leased premises in a proper state of repair, the landlord may bring suit for resulting damages when the injury occurs, without waiting until the lease terminates. The courts have uniformly observed a distinction between a covenant upon the part of a lessee to keep leased premises in repair, and a covenant to deliver up the premises at the expiration of the term in as good condition of repair as they were at the beginning of the term. A covenant to keep in repair requires the tenant to keep the premises in repair at all times during the term, and if he permits them to get out of repair at any time, the lessor, upon that breach, may sue during the term as for injury to the reversion; whereas, a covenant to leave the premises in as good condition as he found them, no action will lie against the lessee until the end of the term, for obvious reasons. Wood, Landlord & Tenant, § 370; Jones, Landlord & Tenant, § 403; Underhill, Landlord & Tenant, § 534; Taylor, Landlord & Tenant (9th Ed.) § 361; Tiffany, Landlord & Tenant, § 116f; 16 R.C.L. p. 1094, § 611; 24 Cyc. p. 1095, § b-II; 36 C.J. p. 168, § 802b; 27 Tex. Jur. 258, § 145; 45 A.L.R. p. 79, VIII. The contract in this case embraced both a covenant to keep the premises in repair and a covenant to return them in as good condition as they were in at the beginning of the term. Plaintiff brought this action for damages for breach of the first covenant during the term of the lease, as he was authorized to do under the authorities.

Defendant cites and relies only upon Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 257, 15 S.W. 228. In that case the lessee covenanted only to return the premises in good condition to the lessor at the end of the term, and the suit was brought before the end of the term for damages for breach of that covenant. The Supreme Court held, in accordance with the established rule, that the action was prematurely brought. The case is not in point here. We overrule defendant's first and second propositions.

■ Defendant's third proposition is, in effect, that the only evidence with reference to damage for failure to keep in repair was that certain repairs were needed, and that there was no testimony of damage to the reversion, wherefore, defendant asserts, judgment should have been for defendant. Several witnesses testified that certain specific repairs to the property were needed, thereby showing defendant had breached the contract in that respect, and at least one witness testified, without objection from defendant, that the difference in the market value of the building "without the repairs" described as needed, and "the value if the repairs had been made," was anywhere from $1,000 to $2,000. We think this proof, which satisfied the jury, satisfied the

láw, as well, both as to the measure of damages, and the amount thereof. We overrule defendant's third 'proposition.

The amount and terms of payment of rentals for the property were prescribed in the following stipulations in the lease contract:

"Seventh: As rental for the said property including the addition thereto and the chattels therein, lessees bind and obligate themselves to pay to the lessor a sum equal to eight (8%) per cent of the gross receipts derived as income from the operation of a hotel and every department thereof in said building from the beginning of this lease (as above provided) until the close of the ten year term herein limited. And it is further agreed and guaranteed by lessees that the amount of rental paid to lessor hereunder ·while this lease is in force and effect, will be not less than an average of Two Hundred and Twenty-five ($225.00) Dollars per month for the first three years during which this lease is in force and effect; Two Hundred and Fifty ($250.00) Dollars per month during the second period of three years, and Two Hundred and Seventy Five ($275.00) Dollars per month during the last four years of the ten year term herein limited. And should the total rentals computed as a percentage of the gross receipts as provided herein, amount to less than the above guaranty, the lessees shall pay to lessor the difference necessary to make the total rental equal to the average amount herein agreed to and guaranteed.

"Full settlement and payment shall be made on or before the 15th day of every month' for the rent ascertained to be due and payable for the calendar month last past. Should past due rentals be placed in the hands of an attorney for collection, or should suit be brought for the collection thereof, 10% of the amount of such delinquent rent shall be added thereto as attorney's fee."

Plaintiff's appeal involves the question of the amount of rent to be paid to the landlord under said provision during the second period of the lease, from August 1, 1930, to July 31, 1933, and relative to , that matter the parties stipulated upon the trial:

"That the gross receipts derived from the operation of the building known as the Aumont Hotel, being the premises involved in the lease sued upon, and every department thereof, from August 1st, 1930, to July 31st, 1933, inclusive, amount to the sum of $93,508.78; that the total rentals paid to the plaintiff under said lease during the period from August 1st, 1930, to July 31st, 1933, amount to the sum of $7606.30."

It appears that, considering the entire lease period up to the time this suit was commenced, defendant had paid plaintiff a total amount (being 8 per cent. of gross receipts) of rents in excess of the sum of the monthly guaranty. In some months 8 per cent. of the gross receipts exceeded the guaranteed rental for those months; in other months 8 per cent. of the gross receipts fell short of the guaranty. Plaintiff contends that under the terms of the contract, quoted above, and particularly the concluding provision for monthly settlements, even though in some months 8 per cent. of the gross receipts paid on the rental exceeded the guaranteed rental for those months, such excess could not in any event be shifted and averaged to make up the guaranteed amount in those months in which 8 per cent. of the gross receipts was less than that amount. We overrule that contention, propounded in plaintiff's second proposition. There is a very reasonable doubt if the provision for monthly settlement, even if considered alone, would warrant the conclusion asserted by plaintiff, and that doubt must be resolved against plaintiff under the rule that lease contracts, such as this, will be construed most strongly against the lessor. 27 Tex.Jur. p. 59, § 13. The doubt is certainly removed by a consideration of the entire provision concerning rentals. It·is obvious from the context that the monthly rentals earned, through operations, for each of the three periods of the term should be averaged so as to make up the guaranty for that particular period. Under that construction it is plain that in those months in which payment of 8 per cent. of the gross receipts exceeded the guaranty for that month, such excess could properly be applied to make up the amount guaranteed for those months in that period in which the 8 per cent. fell under the guaranty. In short, each of the three segregated periods must be considered separately and the terms of the contract construed with particular reference to the several periods, rather than to the whole term. This is so because the matter is so treated in the contract, in which it is plainly provided that rental payments based on 8 per cent. of

gross receipts in each period may be averaged so as to make up the monthly guaranty in that period, but may not be averaged over the entire term for such purpose, as defendant contends.

Without undertaking a further analysis of the provision in question, we hold that under it plaintiff was entitled to at least an average monthly rental of $250 during the second period of the lease; but that, as 8 per cent. of defendant's gross receipts from the operation of the property through that period did not equal the total guaranteed sum of $250 per month, plaintiff was entitled only to the minimum guaranteed, to wit, $250 per month for thirty-six months, or $9,000. Of that amount defendant paid plaintiff the sum of only $7,606.30, leaving a balance of $1,393.70, for which amount judgment should have been rendered below in plaintiff's favor.

The judgment against defendant awarding damages to plaintiff in the sum of $700 will be affirmed; that denying recovery to plaintiff against defendant for rents will be reversed, and judgment will be here rendered that plaintiff, Aumont Hotel Company, recover of defendant, City Hotel Company, the sum of $1.393.70 for rents, in addition to the sum of $700 for damages, and for the costs of appeal.

Affirmed in part; and in part reversed and rendered.